Milton W. McQueen and Frances L. McQueen v. Commissioner.
McQueen v. Commissioner
Docket No. 58528.
United States Tax Court
T.C. Memo 1956-143; 1956 Tax Ct. Memo LEXIS 152; 15 T.C.M. (CCH) 719; T.C.M. (RIA) 56143; June 19, 1956
John M. Cleary, Jr., Esq., for the petitioners. Marvin E. Hagen, Esq., and Sylvan Siegler, Esq., for the respondent. LEMIRE Memorandum Opinion LEMIRE, Judge: This proceeding involves a deficiency in income tax of the petitioners for the taxable year 1951 in the amount of $753.24. The sole question presented is whether the petitioners properly excluded from reported gross income for that year, under section 22(b)(5) of the Internal Revenue Code of 1939, amounts received as sick benefits by Milton W. McQueen from his employer. [Findings of Fact] All the facts have been stipulated and are found accordingly. They may be summarized as follows: Petitioners are husband and wife, residing in Kansas City, Missouri. Their joint tax return for the year 1951 was filed with the collector of internal revenue for *153 the sixth district of Missouri. Petitioner Milton W. McQueen, hereinafter referred to as petitioner, was employed during the year 1951 and for a number of years prior thereto by Trans World Airlines, Inc., hereinafter referred to as the company, and in 1951 he was assistant treasurer. During and prior to the year 1951 the company had in effect a Management Policy and Procedure Manual which was available to all employees. The manual stated that the company reserves the right to add new provisions to and/or modify or rescind any existing provisions at any time without notice. Under the provisions of the manual all applicants for employment were required to complete a pre-employment medical questionnaire and/or a pre-employment physical examination. Occasionally applicants possessing unusual qualifications for some position were accepted under waivers acknowledging certain physical deficiencies. Such employees could not be transferred or assigned to other types of work until clearance had been received from the company's Director - Medical Services, Kansas City, Missouri. During and prior to the year 1951 the company had in effect certain regulations governing the granting of *154 sick leave to its employees. These regulations were contained in the manual and provided as follows: "SICK LEAVE "A. POLICY. - All permanent, fulltime employees shall be granted sick leave with pay by their supervisors in accordance with the following regulations. "B. REGULATIONS. - 1. An employee may be granted sick leave with pay only after the completion of first six months continuous service. "a. An employee shall be required to present to his supervisor satisfactory evidence that he is unable to perform his regular duties because of personal illness or injury. "b. Such evidence may include the report of a physical examination or a statement from a personal or Company doctor, which may be required regardless of the length of absence. "2. Sick leave allowance will accrue at the rate of one (1) work day for each month of service and may accumulate to a maximum of sixty (60) work days. (An employee will not be eligible for sick leave benefits during his trial period; however, sick leave will accrue during that period.) "EXCEPTION: Because of difference in schedule used to compute pay, flight personnel and personnel based overseas shall accrue sick leave allowance at *155 the rate of 1 1/6 calendar days per month to a maximum of seventy (70) calendar days. "3. Sick leave allowance will accrue during each calendar month for which an employee receives pay for at least 1/2 calendar month from the Company, whether he is working or is on sick leave or vacation. Approved sick leave will be deducted from an employee's total accumulated sick leave allowance. After each deduction the allowance will continue to accrue at the regular rate up to the maximum. "4. Employees granted a leave of absence will retain, but not accrue, sick leave allowance while on such leave. "5. Sick Leave Pay "a. Employees during the first three years of employment shall not receive any sick leave pay for the first three days of each illness. "b. Deduction from an employee's sick leave allowance shall be made only for the number of regularly scheduled work days an employee is absent. "EXCEPTION: Flight personnel and personnel based overseas shall have deductions made on a calendar day basis. "c. Regular days off and recognized holidays preceding, during, and immediately following absence shall not be counted when determining the number of days sick leave allowance to be *156 deducted. "d. Sick leave pay shall be at the employee's current salary (base plus merit) and shall include overseas service pay and cost-of-living differential, where applicable. "e. Sick leave shall not overlap on paid vacations or holidays. If an employee becomes ill or injured while on vacation, his sick leave pay shall not begin until the expiration of his vacation. "f. Sick leave pay shall not be granted for pregnancy. "6. During absence due to industrial injury, an employee shall be entitled to receive from the Company the difference between Workmen's Compensation and full salary, for the number of days employee is on pay status with the Company. "7. Terminating employees shall not receive sick leave pay. "8. When an employee's sick leave allowance has been exhausted during a period of absence due to illness or injury, and the employee is still unable to return to work, he may be carried as 'off duty', (show on Form A-432-B report) for a period not to exceed 30 days. If at the end of this period, the employee is still unable to resume his duties, he will either be granted a leave of absence or will be terminated effective the last day of the thirty day 'off duty' *157 period. (See 'Leaves of Absence', Section 42, this Chapter.) "9. If the sick leave allowance of a U.S. National based overseas is exhausted and he is still overseas, his current salary (base plus merit) shall be discontinued, but his overseas service and his cost-of-living differential shall be continued. "C. ADMINISTRATION. - Each Payroll Group Head will be responsible for reviewing each employee absence and for preparing a Group Payroll Report, Form A-432-B. Payroll Section will maintain control records." Petitioner was sick and absent from work from April 14, 1951, to July 15, 1951. Under the regulations he was entitled to sick leave pay for a maximum of 60 work days. During the first 60 work days of petitioner's absence the company paid him by reason of sickness the sum of $2,819.16, in amounts which were at the same rate of pay he was receiving at the time his absence began. The company withheld Federal income tax from the amounts paid petitioner during his absence. On their joint return for the year 1951 the petitioners excluded the amount of $2,819.16 from gross income. In his notice of deficiency the respondent increased taxable net income by that amount. No special *158 reserve fund was set up by the company to pay sick benefits and they were paid out of current earnings the same as business expenses, such as wages. The employees made no contributions in premiums in connection with the company's sick benefit plan. The company is engaged in the transportation of passengers, mail, express, and freight by air throughout the world, and is not authorized or licensed to issue policies of insurance or to engage in the business of health insurance in the State of Missouri. [Opinion] The respondent contends that the plan under which the sick benefits here in question were paid does not fall within the phrase "health insurance" as used in section 22(b)(5) of the Internal Revenue Code of 1939. Glen E. Blackburn, 15 T.C. 336; Branham v. United States, 136 Fed. Supp. 342, on appeal C.A. 6; and Moholy v. United States, 132 Fed. Supp. 32, on appeal C.A. 9. The petitioner, in support of his position, relies upon Epmeier v. United States, 199 Fed. (2d) 508 (C.A. 7); Haynes v. United States, 139 Fed. Supp. 671, which has since been reversed, - F. 2d - (April 20, 1956, C.A. 5); and Herbkersman v. United States, 133 Fed. Supp. 495, *159 on appeal C.A. 6. Since the briefs were filed herein a decision has been rendered in Joseph Oliva, 25 T.C. - (March 22, 1956). The Oliva case presented for the first time before this Court the precise legal question involved in the present proceeding. We held in the Oliva case that section 22(b)(5) of the Code of 1939 was to be strictly construed, and sustained the inclusion of the payments for sick benefits under the plan of the company in the taxpayer's gross income as not constituting "health insurance" under such section. We noted, however, that the decisions of other courts relied upon by the taxpayer there, and likewise by the petitioners here, might sustain a contrary result. The stipulated facts in the instant case are not distinguishable from those in the Oliva case, supra, and it is therefore regarded as a controlling authority here. See, also, Cary v. United States, - Fed. Supp. - (D.C. Nebr., April 5, 1956), and Tinsley v. United States, - Fed. Supp. - (W. D. Okla., March 27, 1956). We conclude that the payment of the amount of $2,819.16 received by Milton W. McQueen in 1951 from his employer as sick leave benefits is not excludable from gross income as "health insurance" *160 within the purview of section 22(b)(5) of the Internal Revenue Code of 1939. The respondent's determination is sustained. Decision will be entered for the respondent.